IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| MEINEKE CAR CARE CENTERS, INC., | ) | CIVIL ACTION NO. |
| | ) | _____ |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT AND** |
| vs. | ) | **MOTION FOR A PRELIMINARY** |
| | ) | **INJUNCTION** |
| IGOR DUGLAS, | ) | |
| Defendant. | ) | |

Plaintiff, for its Verified Complaint and Motion for a Preliminary Injunction against Defendant, alleges and says as follows:

### THE PARTIES

1. Plaintiff, Meineke Car Care Centers, Inc. ("Meineke") is a corporation organized and existing under the laws of the State of North Carolina, with its offices and principal place of business located at 128 South Tryon Street, Suite 900, Charlotte, Mecklenburg County, North Carolina.

2. Upon information and belief, Defendant Igor Duglas (hereinafter referred to as "Defendant" or "Duglas") is a citizen and resident of the State of Florida.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1331, in that this is an action arising under the laws of the United States.

4. This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), in that this is an action arising under an Act of Congress relating to trademarks.

5. This Court also has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1338(b) in that this action presents one or more claims of unfair

competition that are joined with one or more substantial and related claims under the trademark laws.

6. This Court also has supplemental jurisdiction over the subject matter of the First and Third Claims for Relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367 and the case law decided thereunder.

7. Venue of this action in this judicial district and division is proper under and by virtue of 28 U.S.C. § 1391(b)(2), in that, among other things, a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district and division. Venue also is appropriate in this judicial district and division because Defendant contractually consented to this venue in the Franchise and Trademark Agreement he entered into with Meineke.

8. This Court has *in personam* jurisdiction over Defendant under and by virtue of Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure and North Carolina's "long arm" statute, N.C. Gen. Stat. § 1-75.4. Additionally, this Court has personal jurisdiction over Defendant because he consented to such jurisdiction in the Franchise and Trademark Agreement he entered into with Meineke.

### GENERAL ALLEGATIONS
### The Nature of Meineke's Business

9. Meineke grants franchises to qualified persons to establish and operate automotive repair centers under a standard, unique and uniform system developed by Meineke, and grants to those persons the right to use Meineke's federally-registered trade name, logo and other proprietary marks.

## Meineke Trade Name, Logo and Service Marks

10. Meineke is the owner of the trade name "Meineke" and various service marks. The Meineke name and all of its marks and logos are registered with the United States Patent and Trademark Office.

11. The trade name "Meineke" is currently in use, amongst other registrations, under registration numbers 1,241,466; 1,207,490; 1,434,915; 1,610,116; 1,620,331; 2,022,824; 1,191,431; 1,207,483; 1,215,262; 1,268,145; 1,268,264; 2,956,651; and 3,017,566.

12. All of Meineke's proprietary names, logos and marks remain in full force and effect, unrevoked and uncancelled. Meineke has given notice to the public that its name, logo and marks are registered with the United States Patent and Trademark Office by displaying with the name, logo and marks the letter "R" enclosed within a circle.

13. Since July 1972, hundreds of millions of dollars have been spent to advertise the Meineke name, logo and marks.

14. As a result, the Meineke name, logo and marks have become famous, and are strongly associated in the minds of the consuming public throughout the United States and parts of Canada with the products and services offered by Meineke and its franchised chain of independent automotive repair centers.

15. The Meineke name, logo and marks have acquired secondary meaning, enjoy an excellent reputation among the consuming public and constitute property of the greatest value to Meineke.

16. No goods or services bearing the name "Meineke" were manufactured, distributed or sold to the general public prior to the first use by Meineke and its predecessors in interest.

17. More particularly, since July 1972, all goods and services lawfully manufactured, distributed or sold in the United States under the Meineke name, logo and marks have been manufactured, distributed or sold pursuant to licenses granted by Meineke.

18. Each Licensee who so manufactured, distributed or sold such goods and services promised and agreed as a condition of the license to strict control and approval by Meineke over the quality of the goods and services offered by the licensee, as well as the quality of advertising in connection with those goods and services.

**The Franchise Agreement**

19. The relationship between Meineke and its franchisees is governed by the terms of the franchise and trademark agreements entered into between them.

20. On or about July 27, 2007, Meineke entered into a Meineke Franchise and Trademark Agreement with Duglas which granted him the right to operate a Meineke Center located at 1023 North Monroe Street, Tallahassee, FL ("Center No. 2019"). A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit 1**, and is incorporated by reference as if fully set forth herein.

21. On or about July 27, 2007, the Franchise and Trademark Agreement for Meineke Center No. 2019 was transferred and assigned to Ariadna ICS Corp. A true and correct copy of the Assignment of Franchise and Trademark Agreement Dated July 27, 2007 by and between Meineke Car Care Centers, Inc. and Duglas is attached hereto as **Exhibit 2**. Defendant Duglas personally guaranteed to Meineke that Ariadna ICS Corp. would pay and perform all of its obligations under the Franchise Agreement and agreed to be personally bound by and liable for any breach of the Franchise Agreement. A true and correct copy

Owners' Personal Guaranty ("Guaranty") signed by Duglas is attached hereto as **Exhibit 3** and incorporated by reference as if fully set forth herein.

22. Pursuant to the Franchise Agreement, Duglas became authorized: (i) to operate an automotive repair center under the trade name "Meineke" under the Meineke system; (ii) to display the Meineke name, logo and marks; (iii) to receive training and access to Meineke's methods, procedures and techniques; and (iv) to participate in an established network of licensed automotive repair centers, with a product and service for which Meineke has created substantial demand through the maintenance of the highest quality standards and extensive advertising.

23. Pursuant to the Franchise Agreement and Guaranty, Duglas agreed, among other things, to: (i) pay Meineke on a weekly basis a franchise fee, or royalty, in an amount equal to seven percent (7%), five percent (5%), four percent (4%), or three percent (3%) of the center's gross revenues depending on the type of product sold or service performed (Exhibit 1 at Article 3.2); (ii) pay Meineke on a weekly basis an advertising contribution in an amount equal to eight percent (8%) of the center's gross revenues (Exhibit 1 at Article 3.4); and (iii) furnish Meineke with accurate weekly business reports of the center's gross revenues (Exhibit 1 at Article 9.3).

24. Pursuant to Article 17.3 of the Franchise and Trademark Agreement, either party (Meineke, in this case) may obtain preliminary relief in the form of a preliminary injunction of the type sought in this Verified Complaint and Motion, as long as that party simultaneously files a demand for arbitration of such claim pursuant to Article 17.2 of the Franchise and Trademark Agreement and the final merits of such claim are determined in the arbitration proceedings. Accordingly, contemporaneously with the filing of this Verified Complaint and

5

Motion For a Preliminary Injunction, Meineke has filed a demand for arbitration of the matters stated herein with the American Arbitration Association.

**Defendant's Breaches of the Franchise Agreement**

25. During the term of the Franchise Agreement, Defendant breached his obligations and promises under, among other things, Articles 3 and 9 of the Franchise Agreement by failing to submit to Meineke accurate weekly business reports of the center's gross revenues, and by failing to pay Meineke all of the franchise fees and advertising contributions incurred by him during the term of the Franchise Agreement.

26. On March 27, 2009, Meineke sent Defendant a Notice of Default, informing him that he was in default of the Franchise Agreement because he had failed to submit accurate weekly business reports and he failed to pay all of the weekly franchise fees and advertising contributions incurred. Meineke informed Defendant that if he did not cure the defaults within thirty (30) days, Meineke could terminate the franchise license. See Carlet Affidavit attached hereto as **Exhibit 4** and incorporated by reference as if fully set forth herein.

27. Defendant failed to cure the defaults.

**Meineke's Termination Of Defendant's Franchise Agreement**

28. On September 2, 2009, Meineke sent Defendant a Notice of Termination, terminating Defendant's license to operate Center No. 2019, effective September 3, 2009. See Carlet Affidavit.

29. As of the date of the termination, Defendant owed $7,826.64 in outstanding franchise fees, and $12,481.20 in outstanding advertising contributions for a total of $20,307.84. These amounts remain unpaid.

30. On December 11, 2009, Center No. 2019 reopened with a new licensed franchisee.

## Defendant Duglas's Post-Termination Violations

31. In Article 11.4 of the Franchise Agreement, Defendant agreed that upon termination of the Franchise Agreement and for a period of one (1) year from the date of compliance he would not, "directly or indirectly (such as through corporations or other entities owned or controlled by [Defendant]) own a legal or beneficial interest in, manage, operate or consult with": (a) any business operating at the premises of Center No. 2019 or within a radius of six (6) miles of the premises of Center No. 2019 which business repairs or replaces exhaust system components, brake system components, or shocks and struts and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendant's Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

32. This covenant not to compete is reasonably necessary to allow Meineke the opportunity to re-establish its presence in the particular market and to re-capture the goodwill lost by Defendant's ceasing to operate an authorized Meineke Center, and to protect other Meineke franchisees from unfair competition by Defendant.

33. Notwithstanding Defendant's termination as Meineke franchisee for Center No. 2019 and the prohibitions in the Franchise Agreement, Defendant Duglas is operating a competing business under the name Seminole Auto Repair at 1789 Capital Circle SE, Tallahassee, FL 23201 which is within a radius of six (6) miles of the premises of former Center No. 2019. Defendant Duglas is utilizing Meineke's trademarked name while doing so. See Allen Affidavit, attached hereto as **Exhibit 5,** and is incorporated by reference as if fully

7

Case 3:10-cv-00031-FDW-DCK   Document 1   Filed 01/26/10   Page 7 of 18

set forth herein.  See also Affidavit of Cindi D. Hodges attached hereto as **Exhibit 6**, and incorporated by reference as if fully set forth herein.

34. Seminole Auto Repair is a limited liability company incorporated in the State of Florida on October 8, 2009 shortly after termination of Defendant's license to operate Center No. 2019.  See Hodges Affidavit.

35. Seminole Auto repair's registered agent is Nadia Radechenko, who, upon information and belief, is a fictitious person.  See Hodges Affidavit.

36. The address provided in Seminole Auto Repair's Articles of Incorporation for its registered agent is the same as Defendant Duglas's home address.  See Hodges Affidavit.

37. Upon information and belief, Defendant Duglas is the owner and operator of Seminole Auto Repair.

38. Seminole Auto Repair is using the Meineke's trademarked name and is offering automotive repair services prohibited by Article 11.4 of the Franchise Agreement.  See Allen Affidavit.

39. By operating a prohibited competitive business within a radius of six (6) miles of the premises of former Center No. 2019 and by using Meineke's trademarked name, Defendant Duglas is unfairly competing with Meineke and causing customer confusion as to the origin of the services being offered at Seminole Auto Repair.

**The Irreparable Harm Being Caused to Meineke
by Defendant Duglas's Violation of the Post-Term Covenant not to Compete**

40. Defendant was trained in and given access to Meineke's Confidential Information and Defendant is likely using the same in the operation of Seminole Auto Repair.

41. During his term as a franchisee for Center No. 2019, Defendant obtained or had access to detailed knowledge of the Meineke system including, but not limited to, training

manuals, policy manuals, operations manuals, sales promotion aids, business forms, accounting procedures, marketing reports, informational bulletins, product developments, suppliers' discounts, and inventory systems. Meineke has expended considerable time, effort, and resources training Defendant in the operation of his Meineke Center using the Meineke system. Defendant has been given access to detailed knowledge of the Meineke system, including knowledge of pricing proforma, operating procedures, marketing methods, and financial data used in the operation of a Meineke Center.

42. In Article 11.1 of the Franchise Agreement, Defendant agreed he would not reveal any proprietary Meineke information, or use such proprietary information in connection with any business or venture in which he has a direct or indirect interest. He further recognized in Article 11.1 that the Meineke system, in its entirety, constitutes proprietary information including, but not limited to, training manuals, policy manuals, operations manuals, sales promotion aides, business forms, accounting procedures, marketing reports, informational bulletins, product development, suppliers' discounts and inventory systems. It is a practical certainty that Defendant Duglas is using such information in the conduct of his new business.

43. Meineke has successfully placed a new franchisee in Center No. 2019. When a former franchisee violates the covenant not to compete, such as Defendant Duglas has here, he unfairly competes in the market area because of his knowledge and training gained in his relationship with Meineke and palms off of the goodwill developed as a Meineke center. One of the purposes of the one-year covenant against competition is to assist Meineke in its development of a replacement Meineke center and to assist the center once it has been redeveloped. Another is to protect the integrity of the entire Meineke franchise sytem.

44. No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its other licensees, with the current franchisee located at Center No. 2019, and with the franchise-buying public in general as a result of Defendant Duglas's unauthorized conduct.

45. The harm that would result to Defendant Duglas from an Order of this Court directing him to cease the above-described breaches of the post-termination provision of his Franchise Agreement and to cease engaging in the above-described acts of unfair competition is not sufficient to justify permitting him to continue to irreparably harm the rights and interests of Meineke and its existing franchisees.

### The Irreparable Harm Being Caused To Meineke By Defendant Duglas's Infringement Upon The Meineke Name and Mark

46. Defendant Duglas's on-going use of Meineke's trademarked name is likely to cause confusion among the consuming public as to the source of origin of the goods and services offered by Defendant Duglas's automotive repair center and a loss of valuable goodwill to Meineke.

47. Because Defendant Duglas continues to utilize Meineke's trademarked name, it is likely that customers will blame Meineke for any problems that they experience as a result of Defendant Duglas's work on their automobiles, even though Meineke, in fact, has no control whatsoever over the quality of the products or services now being sold by Defendant Duglas to such customers.

48. In addition, it is likely that customers will look to Meineke under what they believe is Meineke's warranty for any poor work performed by Defendant Duglas's competitive business on their automobiles, and for any damage done to their automobiles by Defendant Duglas's competitive business, despite the fact that Meineke has no control

whatsoever over the quality of the products or services now being sold by Defendant Duglas's automotive repair center to such customers.

49. Because Defendant Duglas is no longer subject to Meineke's uniform procedures, techniques and quality control standards, and because he is operating what could appear to be an authorized Meineke franchise, Meineke will suffer a loss of goodwill with customers in the Tallahassee, FL area who are being, or have been, or may be victimized by Defendant Duglas's business practices.

50. It is likely that it will be impossible, as a practical matter, for Meineke to re-establish its former good reputation with lost customers who have been victimized by Defendant Duglas once those customers have switched to other automobile repair facilities.

51. In addition to the irreparable harm now being caused to Meineke by Defendant Duglas's wrongful conduct, Meineke owes a duty to over 800 franchises throughout the United States and parts of Canada to protect them from this public deception and unfair competition by former franchisees who continue to use the Meineke name without paying for that valuable privilege.

52. No amount of money damages alone could compensate Meineke for the loss of valuable goodwill that Meineke has suffered, and will continue to suffer, with its innocent franchisees and with the franchise-buying public in general as a result of Defendant Duglas's deception and unfair competition.

53. The harm that would result to Defendant Duglas from an Order of this Court directing him to cease the above-described breaches of the post-termination provisions of the Franchise Agreement, and to cease infringing Meineke's trademarked name, is not sufficient to justify permitting him to continue to deceive and confuse the consuming public generally,

and to irreparably harm the interests of Meineke and its existing franchisees.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

54. Meineke repeats and re-alleges Paragraphs 1 through 53 above, which are incorporated by reference herein.

55. Meineke has performed all of the obligations required of it under the Franchise Agreement with regard to Center No. 2019.

56. Despite Meineke's performance, Defendant has breached his obligations and promises under the Franchise Agreement by failing to to pay Meineke the full amount of franchise fees and advertising contributions incurred by him prior to his termination as a Meineke franchisee.

57. Accordingly, Meineke is seeking a judgment against Defendant in the amount of $20,307.84, representing the unpaid past-due franchise fees and advertising contributions.

58. Additionally, Defendant is in breach of the non-compete covenant contained in Article 11.4 of the Franchise Agreement by reason of his operation of Seminole Auto Repair within a six (6) mile radius of authorized Meineke Center No. 2019.

59. In addition to the monetary relief prayed for above, Meineke is entitled to a Preliminary Injunction directing Defendant Duglas to cease and refrain from for a period of one (1) year from the date of compliance, "directly or indirectly (such as through corporations or other entities owned or controlled by them), own[ing] a legal or beneficial interest in, manag[ing], operat[ing] or consult[ing] with": (a) any business operating within a radius of six (6) miles of the premises of Center No. 2019 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date

Defendant's Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

## SECOND CLAIM FOR RELIEF
**(Trade Mark Infringement)**

60. Meineke repeats and re-alleges herein paragraphs 1 through 59 above, which are incorporated by reference herein.

61. Since his termination by Meineke, Defendant Duglas has deliberately and intentionally used Meineke's trademarked name in interstate commerce without Meineke's permission or authority, and is continuing to do so now, despite of and in open defiance of Meineke's demands that he cease such unlawful activity.

62. The nature and extent of Defendant Duglas's wrongful and unauthorized use of Meineke's trademarked name is such that Defendant Duglas's conduct is likely to cause actual confusion, mistake and deception among the consuming public.

63. Defendant Duglas's unauthorized use of Meineke's trademarked name constitutes infringement in violation of, among other things, §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

64. As a direct and proximate result of Defendant Duglas's acts of infringement, Meineke has suffered actual pecuniary losses.

65. In addition, unless Defendant Duglas's is restrained and enjoined from continuing to infringe Meineke's trademarked name , Defendant Duglas's unlawful conduct will seriously erode and damage Meineke's valuable goodwill, commercial reputation, name, logo, and marks, and will continue to cause confusion, mistake and deception among the consuming public, including particularly those persons seeking authorized Meineke products and services, thus causing Meineke to suffer irreparable harm, for which there is no fully

adequate legal remedy.

66. By reason of the foregoing, Meineke is entitled to a Preliminary Injunction against Defendant Duglas, restraining and enjoining him from any further use of Meineke's tradename, logo, marks, advertising, telephone listing, forms, manuals, products, computer software, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

67. More particularly, in accordance with 15 U.S.C. §§ 1116 and 1118, Meineke is entitled to a Preliminary Injuction directing Defendant Duglas to: (i) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo or mark confusingly similar to the Meineke name, logo, marks or trade dress.

68. In addition to the injunctive relief prayed for in the preceding paragraph, Meineke is entitled to a judgment against Defendant Duglas, pursuant to 15 U.S.C. § 1117(a) and (b), in the amount of Defendant Duglas's profits and/or Meineke's damages, since his termination as a Meineke franchisee.

69. In accordance with 15 U.S.C. § 1117(a), the amount of Defendant Duglas's profits is measured by Defendant Duglas's total sales since his termination as a Meineke franchisee.

70. Accordingly, by reason of Defendant Duglas's acts of trademark infringement, Meineke is seeking a judgment against Defendant Duglas, pursuant to 15 U.S.C. § 1117(a) and (b), in an amount to be determined at arbitration, plus the costs of this action, as

authorized by 15 U.S.C. § 1117(a) and (b).

## THIRD CLAIM FOR RELIEF
**(Attorneys' Fees)**

71.     Meineke repeats and realleges Paragraphs 1 through 70 above, which are incorporated by reference herein.

72.     Article 17.6 of the Franchise Agreement provides:

> "The Party who prevails in any arbitration or judicial proceeding will be awarded its costs and expenses incurred in connection with such proceedings, including reasonable attorneys' fees."

73.     In accordance with the provisions of Article 17.6 of the Franchise Agreement, Meineke is entitled to recover its costs and expenses, to include its reasonable attorneys' fees, in the event it prevails in this proceeding.

WHEREFORE, Meineke Car Care Centers, Inc. respectfully prays that the Court:

1.      Enter a Preliminary Injunction against Defendant Duglas in accordance with Meineke's First Claim for Relief, directing Defendant Duglas, his agents, servants, employees and attorneys, and all persons in active concert or participation with him who receive actual notice of said Preliminary Injunction, by personal service or otherwise, to cease and refrain, for a period of one year from the date they begin compliance with such covenant not to compete, "directly or indirectly (such as through corporations or other entities owned or controlled by them), own[ing] a legal or beneficial interest in, manag[ing], operat[ing] or consul[ting] with": (a) any business operating within a radius of six (6) miles of the premises of Center No. 2019 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendant's Franchise Agreement terminated which business repairs or replaces exhaust system components, brake system

components, or shocks and struts.

2. Enter a Preliminary Injunction against Defendant Duglas in accordance with Meineke's Second Claim for Relief, directing Defendant Duglas, his agents, servants, employees and attorneys, and all persons in active concert or participation with him who receive actual notice of said Preliminary Injunction, by personal service or otherwise, to: (i) cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo, mark or trade dress confusingly similar to the Meineke name, logo, marks or trade dress.

3. Confirm any judgment, order, award and/or permanent relief granted by the arbitrator in the arbitration that Meineke is simultaneously filing with this motion for injunctive relief.

4. Award Meineke such other and further relief as the Court may deem just and proper.

5. Meineke further tenders to and respectfully prays that the Court treat this Verified Complaint and the Exhibits attached to it as an Affidavit in support of Meineke's Motion for a Preliminary Injunction.

This the 26th day of January, 2010.

                                      s/ Todd W. Billmire
                                      N.C. State Bar No. 34431
                                      Amy K. Reynolds
                                      N.C. State Bar No. 21266
                                      Attorneys for Plaintiff
                                      Meineke Car Care Centers, Inc.
                                      128 South Tryon Street, Suite 900
                                      Charlotte, NC 28202
                                      Telephone: (704) 644-8105
                                      Fax: (704) 358-4706
                                      E-mail: todd.billmire@meineke.com

# VERIFICATION

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

MICHAEL CARLET, being first duly sworn, deposes and says that he is the Chief Financial Officer of Meineke Car Care Centers, Inc. (hereinafter referred to as "Meineke"); that, as such, he is authorized to make this oath and verification; that, in his capacity as the Chief Financial Officer of Meineke, he is a custodian for all of the books and records of Meineke, and is familiar with those books and records; that, in his capacity as the Chief Financial Officer of Meineke, he is familiar with Meineke's business operations, including its business dealings and its relationship with its franchisees generally and with Defendant in particular; that he has read the foregoing Verified Complaint and Motion for a Preliminary Injunction; that he knows the contents thereof to be true of his own personal knowledge, except for those allegations made in the Verified Complaint upon information and belief, and except for those allegations contained in the Verified Complaint that are verified by the Allen Affidavit or Hodges Affidavit and that, as to the allegations contained in the Verified Complaint which are made upon information and belief, he believes them to be true.

Dated this the 25th day of January, 2010.

_____
Michael Carlet

Sworn to (or affirmed) and subscribed to before me this day by Michael Carlet.

Date: January 25th, 2010

_____
Cindi D. Hodges, Notary Public

My Commission Expires: November 30, 2011