# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:10-cv-00031-W

| | |
|---|---|
| MEINEKE CAR CARE CENTERS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) **TEMPORARY RESTRAINING ORDER** |
| IGOR DUGLAS, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for a Preliminary Injunction and Memorandum in Support, filed January 26, 2010 (Doc. No. 2). The Court scheduled a hearing on the Motion on March 26, 2010, at 3:00pm, and instructed Plaintiff to serve the hearing notice on Defendant. At that time, Defendant had not yet appeared though Plaintiff had tried on multiple occasions to serve Defendant with the Verified Complaint and Motion for Preliminary Injunction. Plaintiff has filed Affidavits/Declarations of Service of Summons and Complaint regarding these attempts. (Docs. Nos. 8,9,10,11,12). In addition to attempts to serve process upon Defendant, Plaintiff mailed the notice of hearing to Defendant's last known address. (Doc. No. 9). Because it was uncertain whether Defendant had adequate notice, Plaintiff subsequently converted its Motion for a Preliminary Injunction to an Ex Parte Temporary Restraining Order on March 23, 2010. (Doc. No. 13) At the hearing held on March 26, 2010, the Court heard oral arguments on Plaintiff's motion. Defendant did not appear at this hearing, and to date, has not filed any pleading with this Court. After due consideration of the Motion before it, the Court makes the following findings of fact and conclusions of law and GRANTS Plaintiff's Motion for a Temporary Restraining Order.

1. On May 30, 2008, Meineke entered into a Meineke Franchise and Trademark Agreement with Defendant Duglas, which granted him the right to operate a Meineke Center located at 1023 North Monroe Street, Tallahassee, Florida ("Center No. 2019"). (Verified Complaint ¶ 20.)

2. By signing the Franchise Agreement, Defendant acquired the right to use the Meineke Marks and received from Meineke proprietary information and know-how concerning, among other things, training manuals, policy manuals, operations manuals, sales promotion aids, promotional techniques, business forms, accounting procedures, marketing reports, informational bulletins, product development, suppliers' discounts, and inventory systems. (Verified Complaint ¶ 21 and at Ex. 1, Art. 10, 11.)

3. In exchange for those privileges, Defendant agreed to submit accurate weekly business reports showing the gross revenues generated by his Meineke franchised business and to pay a percentage of those gross revenues on a weekly basis in the form of franchise fees and advertising contributions. (Verified Complaint ¶ 23.)

4. Subsequent to Defendant purchasing the Meineke franchise, he assigned this franchise license to a corporation known as Ariadna ICS Corp ("Franchisee"). (Verified Complaint ¶21.)

5. In consideration for allowing the Defendant to assign their franchise license to a corporation, Defendant gave to Meineke an unconditional guaranty that obligated Defendant to honor all of the obligations of the Meineke Franchise and Trademark Agreement as if he were the franchisee of record. (Verified Complaint ¶21 and Ex. 3.)

6. During the term of the Agreement, Defendant and the Franchisee also acknowledged and

agreed that, as a result of regular and continuing access to this confidential and proprietary information, it would be impossible for them to engage in the same business activities following a termination of the Franchise and Trademark Agreement without using Meineke's confidential and proprietary information. (Verified Complaint at Ex. 1, Article 11.4.)

7. Accordingly, in Article 11 of the Franchise Agreement, the Franchisee as well as the Defendant, agreed that for a period of one (1) year after leaving Meineke, Defendant would not "directly or indirectly (such as through corporations or other entities owned or controlled by [Defendant] or [Defendant's] Owners), own a legal or beneficial interest in, manage, operate or consult with" any "Competitive Business" (as defined in §11.2 of the Franchise and Trademark Agreement) at the premises of former Center No. 2019 or within six (6) miles of former Center No. 2019 or within six (6) miles of any other Meineke Center existing as of the date that Center No. 2019's license terminated. (Verified Complaint at Ex. 1, Article 11.4.)

8. During his term of the Franchise and Trademark Agreement, the Franchisee and the Defendant failed to submit all required weekly business reports and failed to pay all required weekly franchise fees and advertising contributions. (Verified Complaint ¶ 25.)

9. Meineke sent Franchisee and Defendant a Notice of Default on March 27, 2009, informing them that if they failed to cure the defaults within thirty days, the franchise license previously granted to Franchisee would be subject to termination. (Verified Complaint ¶ 26.)

10. Franchisee and Defendant failed to timely cure these defaults, so Meineke sent Franchisee

and Defendant a Notice of Termination on September 2, 2009, informing them that the license for Center No. 2019 was terminated effective September 3, 2009. (Verified Complaint ¶ 28.)

11. Upon termination, Defendant was not longer authorized to use Plaintiff's marks or Franchise name. (Verified Complaint at Ex. 1.)

12. Meineke's Notice of Termination demanded that Franchisee and Defendant comply with the post-termination covenants as set forth in Articles 11 and 15 of the Franchise Agreement. (Verified Complaint at Ex. 1.)

13. While Franchisee and Defendant abandoned the location for Center 2019 after receiving the notice of termination, Defendant caused to be opened and commenced operation of a competing automotive repair business located within a six (6) mile radius of Center No. 2019. (Verified Complaint ¶¶ 32-37 and at Ex. 5.)

14. In the operation of this Competitive Business, Defendant is using Meineke's trademarked name on receipts given to customers without authorization from Meineke. (Verified Complaint ¶¶ 32-37 and at Ex. 5.)

15. Plaintiff Meineke has made a clear showing of likelihood of success on the merits with regard to its trademark infringement claim by showing it has a valid, protectable trademark, and Defendant has engaged in an unauthorized use of Meineke's mark that is likely to cause confusion among consumers. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1997). Here, Defendant is printing Meineke's trademarked name, without permission, on its receipts provided to customers. Defendant's use to Meineke's trademarked name is

also likely to cause customer confusion concerning the origin of goods or services. "Continued trademark use by one whose trademark license has been cancelled satisfied the likelihood of confusion test and constitutes trademark infringement." See Burger King Corp. v. Mason, 710 F.2d 1480, 1493 (11th Cir. 1983).

16. Plaintiff Meineke has made a clear showing of likelihood of success on the merits with regard to its covenant not to compete. First, the covenant was written and agreed to by the parties in §11 of the Franchise and Trademark Agreement and was based upon valuable consideration. The covenant's one year restriction is reasonable because other courts have upheld periods in excess of one year in similar circumstances. See e.g. Jewel Box Stores Corp. v. Morrow, 158 S.E.2d 840, 844 (N.C. 1968) (enforcing ten-year covenant); Keith v. Day, 343 S.E.2d 562, 567-68 (N.C. Ct. App. 1986) (two-year covenant reasonable); Triangle Leasing Co., Inc. v. McMahon, 393 S.E.2d 854, 858 (N.C. 1990) (two-year restriction not improper). The territory of a six (6) mile radius is also reasonable because it is clearly within the range of what North Carolina courts have deemed reasonable in similar circumstances. See e.g. Keith, 343 S.E.2d at 567-68 (greater Raleigh area was reasonable); Forrest Paschal Mach. Co. v. Milholen, 220 S.E.2d 190, 197 (N.C. Ct. App. 1975) (350-mile restriction enforced). The covenant is not against public policy because "[i]t is as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 380 (N.C. 1988) (citing Sonotone Corp. v. Baldwin, 42 S.E.2d 352, 355 (N.C. 1947)).

17. Plaintiff Meineke has made a clear showing that it will likely suffer actual, imminent and irreparable harm because its goodwill and reputations with consumers will be damaged if

the Court does not enter the requested temporary restraining order. Plaintiff will also be irreparably harmed if Defendant ignores the covenant and uses Plaintiff's knowledge, manner, and training obtained through the former Franchise relationship to gain customers within the restricted area through Defendant's ability to offer similar services at lower prices because Defendant is no longer paying franchise fees.

18. The balance of equities tips in the favor of Plaintiff because it will suffer immediate and irreparable harm whereas any harm suffered by Defendant is self-inflicted because Defendant agreed to certain consequences in the Franchise and Trademark Agreement.

19. Granting the temporary restraining order is in the public interest because the public could be deceived and confused by the Defendant's unauthorized use of the Meineke name. Further, Defendant could continue to unfairly compete with Meineke's authorized area franchisees.

It is accordingly ORDERED and ADJUDGED that:

1. Defendant shall cease and refrain from directly or indirectly (such as through corporations or other entities owned or controlled by Defendant), owning a legal or beneficial interest in, managing, operating or consulting with: (a) any business operating within a radius of six (6) miles of the premises of Center No. 2019 which business repairs or replaces exhaust system components, brake system components, or shocks and struts; and (b) any business operating within a radius of six (6) miles of any Meineke Center existing as of the date Defendant executed their Franchise and Trademark Agreement

with Plaintiff, which business repairs or replaces exhaust system components, brake system components, or shocks and struts.

2. Defendant shall cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise and all other things and materials of any kind which are identified or associated with the Meineke name, logo, marks or trade dress, or which contain a name, logo, mark or trade dress confusingly similar to the Meineke name, logo, marks or trade dress.

3. Plaintiff shall, prior to taking any steps to enforce this Order, post security, in the form of a cash bond or corporate surety bond or other form approved by the Court, in the amount of $100.00 for the payment of such costs and damages as may be incurred or suffered by Defendant if found to have been wrongfully restrained, pending the hearing and determination of the continuation of this Order.

4. Unless extended by the Court, this Order shall become valid upon the posting of bond and shall expire ten (10) calendar days after the issuance of this Order.

IT IS SO ORDERED.

Signed: March 31, 2010

Frank D. Whitney
United States District Judge